And for the accountant is Mr. Nizar, Jose, and Steve, alright, welcome, you may proceed. May it please the Court, Counsel, I'm Assistant Attorney General Richard Huzzack, Counsel for the Department of Insurance and the Director of the Department of Insurance, and I urge the Court in this case to reverse the Circuit Court's judgment based upon its interpretation of the controlling statute and to affirm the Director's decision with respect to the retaliatory tax liability of the plaintiff's taxpayers for the year 2004. The controlling issue in this case is a question of statutory interpretation relating to the meaning of Section 444 of the Insurance Code, which establishes and defines the retaliatory tax. And the focus of this interpretation question is subsection 3 of Section 444, which lists the taxes, charges, fees, and penalties included within the retaliatory tax. This is a somewhat complicated tax in the first place. The way it operates is somewhat complicated. If the Court would like me to unpack some of the basic elements to lay the landscape before I get into my argument about the statutory interpretation, I'd be glad to do that. Okay. The subsection 1 of 444, which establishes the retaliatory tax, essentially says if Illinois companies are subject to higher taxes, charges, fees, and penalties for doing business in some other jurisdiction, then if Illinois charges less than that jurisdiction charges for a company with the same activities, taxes, penalties, fees, and charges, then the companies from that jurisdiction have to pay a retaliatory tax. The purpose of the statute, which has been upheld against constitutional challenge, is to discourage the types of taxes against out-of-towners that jurisdictions are sometimes prone to enact. So the idea is if your home state's taxes, charges, fees, and penalties are lower than ours, no retaliatory tax. If they're higher, then your companies have to pay a retaliatory tax. You can't just look at those tax statutes and fee statutes in the abstract. You have to compare a hypothetical Illinois company, which is essentially engaged in the same business, same activities, same operations as the out-of-state company. If that hypothetical company would be paying more in the home state of this foreign insurance company, then the retaliatory tax kicks in. Subsection 1 essentially just establishes that proposition and it says if your home state requires the payment of penalties, fees, charges, or taxes greater than Illinois requires in the aggregate for like purposes, then the retaliatory tax is imposed. Subsection 3 is the one that's the focus of this controversy. And it says, it's beginning language, which is critical, says, the terms, penalties, fees, charges, and taxes in subsection 1 of this section shall include, and then it proceeds to list Illinois privileged taxes, which are taxes that insurance companies pay on their premiums, their premium income, from selling premiums, even if they don't have a net profit. They have to pay a tax on their net premium income. Sort of like you may not have any net income on owning property, but you've got to pay property taxes because you own it. Then it says also Illinois income taxes. And then it refers to the types of home state taxes that are used to make the comparison. They include income taxes, personal property taxes, privileged taxes. So it's essentially a list of the taxes, penalties, fees, and charges that are included within the scope of the retaliatory tax. Now, the more you pay in Illinois taxes, fees, and charges, the higher your Illinois basis. And that tends to reduce or eliminate any retaliatory taxes. In fact, Illinois charges more for out-of-state companies' total taxes, fees, and charges than a similar Illinois company would pay in that company's home state. There's no retaliatory tax. So the more you pay in privileged taxes or premium taxes, in Illinois income taxes, in any of the other things, I think fire marshal fees for home insurance companies is probably one of the other biggest examples. The more you pay in Illinois taxes, fees, and charges, the higher your Illinois basis and the lower your retaliatory tax is going to be or it may be eliminated entirely. That's the basic structure. It's a little complicated, but it's not that complicated. You don't have to be a rocket scientist to figure it out. So the focus of this dispute is, does the language in subsection 3 specify a particular method of allocating the payments of Illinois income taxes as one of the components of the retaliatory tax basis calculation? Does it specify the accounting method for allocating those income tax payments to a particular time period or year? If it doesn't do that, then I think the parties fairly agree that if it's agnostic on that what I'll call temporal accounting question, then it was within the director's power, pursuant to his rulemaking authority, to prescribe those details of the calculation. If it's agnostic or neutral on this temporal accounting issue, doesn't control the specific details of that issue, the director was free to pass the regulation that he did, the regulation adopts a cash accounting method for purposes of calculating the Illinois basis for retaliatory taxes, and the plaintiff companies lose. If they're correct, however, and this was the position adopted by the circuit court, who was convinced by their arguments, that this subsection 3 does prescribe a specific temporal accounting method, it controls the manner of determining in which time period an actual payment of Illinois income taxes shall be attributed. How shall it be allocated? Now, if not everybody knows about cash and accrual accounting, it's a pretty straightforward proposition, but let me just say it for the record so that we're all clear here. If you're a company, most individuals are cash on a cash basis. You get your paycheck on a given day, and when you file your taxes at the end of the year, whatever year you received it is when you report it. Companies don't always follow that method. Sometimes they follow an accrual method. Economists, I believe, say that it's a more accurate depiction of the company's operations for public securities reporting purposes, etc. But if you have an order for widgets in your company, and you deliver them in December of one year, you've earned the payment for those widgets, and under an accrual accounting method, you book that income corresponding to those widgets in December. Under a cash method, companies are free to follow that. If they don't get the payment until January, they book it in the following year. So that's the difference, and the question is whether subsection 3 of section 444 prescribes, I'll call it an accrual method. The plaintiffs quibble with my terminology here, but essentially they're saying that it excludes a cash method of accounting. It insists that there be a specific temporal accounting method adopted by the director, and it says it cannot be a cash method of accounting, which is what the director's regulation does adopt. And they use the word incurred as opposed to accrual. I'm not sure that in the world of accounting there's really any difference, but it seems that they use that because for federal tax purposes, an accrual method of accounting requires that a refund, which is where the monies that are in dispute in this case, happen. That a refund not be posted back to the original year that the refund relates to, but be posted to the year that the refund was accepted or received. That's not what they did here, but let's not get into that sort of drilled down deep into the weeds clarification here. The point is that if this statute does not say what they say it says, it does not prescribe an accrual type method of accounting for reporting Illinois income taxes, then on this key issue, their interpretation of the statute is incorrect. The director had authority to promulgate the regulation he promulgated, prescribing a cash basis, and the circuit court's statutory interpretation is incorrect, and the director's decision is incorrect. What's at stake in this case? $2.4 million? I think that's approximately right. I know how much the refund was. It was approximately $8 million for the first name plaintiff who joined this corporate group after the original 1999 year in question, but I honestly don't know. I'd be glad to look and my rebuttal would get out. I don't know that the precise figure matters, but it's around there anyway. There seems to be a suggestion in this case that if impose meant the same thing as pay instead of when it was accrued, then the plaintiffs would be paying this extra money that they would not have originally had to pay if they had not overpaid their income taxes in the three years involved. Isn't that correct? Is the argument whether they're being unfairly required to pay something they wouldn't otherwise pay because they didn't get a tax benefit? They overpaid their taxes, and your theory of how we should interpret it means by overpaying their taxes, they have to pay $2.4 million more than they would have otherwise. So they're being penalized for paying. Let me vehemently disagree with that characterization. This is one of those no good deed goes unpunished type situations. When they paid higher taxes originally, it increased their Illinois tax basis for their privileged tax and lowered their retaliatory taxes. So they got the benefit of lowering their retaliatory taxes in an earlier period, and now they want to say, oh, but we don't have to declare the refund because it has to be done according to the year in which the original operations referred to, and we'll just go back and reamend our retaliatory tax return for that year, for 1999. And the answer to that is, that's not how this works. It really essentially comes out as a wash in the general run of cases. You overpay in one year, you get a refund in a later year. I won't say that it nets out. You might wind up paying more taxes. You might wind up paying less taxes. If you're guilty of playing tax accounting games, hopefully somebody will stop that. But there can be a tendency, depending upon how your operations and profits go, to try and pin income taxes into one year and then claim a retaliatory tax benefit from raising your basis in that year and then later. The answer to my concerns is, they may have overpaid their income taxes in 1999, 2000, 2001, but they get the benefit for doing that by reducing their retaliatory tax? That's correct. It increased their basis in those years, which reduced their retaliatory tax. Now, I can't say that I know that that reduced their retaliatory tax specifically, but as a general proposition, it comes out even. It's not as if there's a clear benefit under the cash accounting system to the department in cases. It can work out the other way. It could be that by virtue of having a refund in a later year, on a cash accounting method, they wind up ahead. Remember, they got a big income tax refund. So now they're saying, not only do we get the benefit of the income tax refund, but we get to essentially pick the year into which we're going to attribute that refund for purposes of retaliatory tax calculation. There seems to be a distinction raised between taxes imposed and taxes paid. To agree with you, would we have to conclude that there's no meaningful distinction between these terms? No, not at all. Not at all. And I think this is why they have perhaps cleverly presented the court with a false choice. They have indicated that this statute controls the accounting method, and it has to be either imposed or paid. And if imposed and paid are two different terms, or collected, I guess, is actually the term for the privilege taxes. If collected means sort of on a cash basis, then imposed must mean something else, and it must be a non-cash basis. And our position is, there isn't a choice between cash and accrual when you look at what was intended in this statute at all. The statute wasn't intended to address that issue at all. It was intended simply to list the types of items that are included in the retaliatory tax calculation and left the details of the specific accounting methods to be used. For calculating the retaliatory tax in a given year. To the department. And I want to point out that the position they took in court is not the position they took when they filed their return. They didn't say, we disagree with the department's interpretation of the statute, therefore its regulation is wrong. They simply failed to disclose 80% of their refund, and when they got caught failing to disclose it, they said, oh, well, wait a minute. We interpreted your regulation to mean something different than you interpreted it to mean. And by the way, you're misinterpreting your own statute. So these are after-the-fact arguments inconsistent with their own behavior in this case when they filed their return. And if you'll look long and hard at one word in this section and focus on only that word and ignore the rest of it, you can come up with an argument that imposed must have some special meaning. And it must have a meaning that favors the plaintiffs in this case. And my answer to that is, you're ignoring the rest of the statute. The statute doesn't indicate any intention whatsoever to get into the details of temporal accounting methods for calculating the retaliatory tax. Its clear purpose, as manifest from the first sentence of this section, is merely to identify what's included and what's not included. It's the scope of the retaliatory tax. It doesn't include every governmentally imposed tax fee or charge under the sun. It only encompasses those that are identified. And by necessary implication, anything else is outside the scope of the retaliatory tax. So if you have a television in your corporate headquarters and a cable TV subscription and you pay taxes on those, that's not included in the retaliatory tax. This is an enumeration of the types of items that are included and, by necessary implication, are not included in the retaliatory tax. And there's nothing in this section that relates to periods of time at all. There's nothing in it that gives an indication that it was the legislature's intention to say, now, we're going to micromanage the director's administration of this with respect to how you allocate specific items of privileged taxes or personal property taxes or Illinois income taxes to this year or that year. Do you use a cash accounting method or do you use an accrual accounting method? There's nothing in there at all that suggests that this was the legislature's intent. And if they wanted to do that, they certainly could have used much clearer language very easily to convey that intention. The thrust of this position is that the purpose of this section is abundantly clear by the first words out of the legislature's mouth when they said, the terms, penalties, fees, charges, and taxes in subsection 1 of this section shall include. That's all they're doing. They're saying this is what's included. That's the purpose of this section. It has nothing to do with the idea of specifying a precise method of tax accounting, whether it be accrual or cash accounting methods to determine these things. There are other problems with the plan's position as well. The normal meaning of the word imposed is simply to make applicable, to make it binding. That is perfectly consistent with the purpose of the section as indicated by the first section. When you say, are property taxes imposed on churches? The answer is no. They're not binding on churches. They're exempt because they qualify for a religious exemption. If the language is income tax imposed on corporations in Illinois, the answer is yes. That's a common, widely understood, and widely used meaning of the term in tax statutes. I want to add one other thing. To a certain extent, I'm simply repeating the arguments that are in my brief, which I think are relatively straightforward and convey our position, which is that in the separate section with respect to the privilege tax, which is filed on the same return and goes into the calculation of the income tax, the legislature did specify an accounting method. They said that to the extent you get a partial credit against your privilege taxes for income taxes that you pay in Illinois, that credit shall be determined on a cash basis. The legislature knew how to specify a temporal accounting method when it wanted to do so, and it's done so in the very same part of the insurance code that ties into this part of the insurance code that includes the retaliatory tax. So they know how to do it. In this situation, they didn't do it at all. And to suggest that, you're going to have a requirement that privilege tax credits based upon income taxes be calculated on a cash method, which is what that statute specifically requires. But that then you're going to go to an accrual method or an incurred method, as the plaintiffs call it, to figure out what the other part of your privilege taxes creates this crazy hybrid inconsistent system that just doesn't work. There are more problems with a plaintiff's position, as I think I've articulated in my brief. They have zeroed in on a single word in the statute. They have given it one possible meaning, but it's not the only possible meaning. It's not even the most obvious meaning. And they've insisted by focusing on it excessively that it has to support their interpretation of the statute. And they're losing the forest for one twig on one tree. The rest of the statute couldn't be clearer that that was not the intention of the legislature when it provided this list of things that are included in the retaliatory tax. For those reasons, I urge the court to affirm the director's decision and reverse the circuit court's judgment. Thank you. Thank you. Mr. Sneed. Yes, thank you. May it please the court. I would like, with the court's indulgence, to hand out some charts that are geared to the record. We showed them to Judge Schmidt and the circuit court, and I think they will explain all the questions that came to Mr. Hussock during the original argument. Go ahead. My colleague, Ms. Williams, has them blown up and can make sure we're on the same chart. The first question was, can you explain the tax a little bit, how it works? The retaliatory tax is an unusual tax. It's not a tax on income or an excise tax. It's a tax designed to equalize burdens in different states. It only applies to foreign insurers, so it's important to keep in mind. It's essentially a discriminatory tax only against foreign insurers. It says, we're going to determine what you've paid in Illinois to do business here. All of the taxes, penalties, fees that requires you, a foreign insurer, let's say in Nebraska, to do business here in Illinois. Then we're going to hypothesize that an Illinois company did the same amount of business in your state, Nebraska, and we're going to determine what would have been the burden in that state on the Illinois insurer doing business over there. That's the foreign state basis on the chart. You create these two columns, and then the tax is based on the comparison. That's the second chart. If the Illinois basis is higher than the foreign state basis, there's no tax. There's nothing to equalize. If the foreign state basis, however, is higher, the differential is the retaliatory tax. What's the point of this tax? It's not to raise revenue, and that's clear in the case law, including from the Supreme Court. If it were to raise revenue, it would be unconstitutional. These taxes have only been held to pass constitutional muster, not because they raise revenue, but because the theory is they will protect domestic insurers that do business in the foreign states from excessive taxation. The idea being, if the foreign state basis is higher, the foreign state insurer doing business here gets hit with a large retaliatory tax, it will go back to Nebraska and tell its legislature or lobby its legislature, you've got to decrease these taxes that are imposed on Illinois insurers doing business here because it's killing us in Illinois. The theory is that the foreign state will reduce its taxes, and domestic insurers, Illinois insurers, will be protected from excessive taxation. In the western and southern case in the U.S. Supreme Court in the 80s, that's how these taxes, which are in 49 states, passed muster. So that's how the tax works. How it works in this case, which were the questions from Justice Holder White and Seidman, is something we want to illustrate. We paid income taxes, premium taxes, fees, and calculated the retaliatory tax in the 99, 2000, and 2001 years, and that's in the third chart. And as you'll see in 99, the Illinois basis is far higher than the foreign basis, so there's no retaliatory tax. The same happened in 2000, and the same happened in 2001. There was no retaliatory tax due in those years because the Illinois basis was higher. But in 2004, my clients got a tax refund, an income tax refund from Illinois of about $8 million. That changed what we had actually paid in 99, 2000, and 2001. It brought the Illinois basis down in 99, 2000, and 2001. Actually, for 99, 2000. But for 99, the Illinois basis was still so high that there was no retaliatory tax due. It brought it down, though, in 2000 to the point where there was a retaliatory tax due of $1.9 million, which my client paid. And in 2001, it didn't affect the fact that there was no retaliatory tax due. That's what happened. We paid $1.9 million because when we adjusted our Illinois basis because of the tax refund, matching it to the year from whence the tax refund came, we did owe, in fact, additional retaliatory tax of $1.9 million, which we paid. This dispute exists because the government, the Department of Insurance, wants us to pay more. $2.7 million more plus 12% interest plus penalties. And the reason they get to that is they didn't care that these income taxes refunded came from 99, 2000. They wanted to treat it as a negative income tax in 2004, which throws the Illinois basis into a negative amount compared to the foreign basis for that year and creates a large retaliatory tax. $2.7 million more than if we had simply paid the taxes in the correct amount at the right time. We are being penalized for overpaying income tax. There's no way around it. The department's argument that we aren't is incorrect. We are. Well, what if you, this is an income tax refund. Correct. What if you had paid in 2001 exactly the amount of tax was subsequently determined you owed, so you didn't get a refund in 2004? If we had paid what we should have owed and had no refunds, we would have ended up paying a $1.9 million more in retaliatory tax for the years in question. That would have been the difference. That was the tax benefit for us overpaying. We would have paid $1.9 million more right then. So there would have been a retaliatory tax? It would have been for the one year, the year 2000, but only for the year 2000. Of how much? $1.9 million. What's at stake in this case? $2.7 million plus 12% interest plus penalties. So they're asking for an additional $800,000 plus interest and penalties? No. They're asking for an additional $2.7 million. They said we owed $4.6 and we paid $1.9. The penalty that we're being hit with for simply overpaying income taxes is $2.7 million of additional retaliatory tax than what would otherwise have been due, plus interest and penalties. It's not about accounting method in the statute. It's not. And it's not how we argued and it's not why the circuit judge ruled in our favor. The statute says something. It means what it says. It refers to the income tax in a very specific way. Okay, counsel, let me stop you right there because I want to make sure I'm clear. So it is not your position that the insurance code requires an accrual method versus the director's rule requiring a cash basis method? Correct. That's not our position. Okay. We do not say that section 444, which is the retaliatory tax, has an accrual method of accounting built into it. That's how our argument has been characterized, but it is not our argument. Okay. It doesn't say income tax imposed without any reference. It refers specifically to 201A-D, which is a 7.3% tax on your taxable income in a taxable year. And that, we say, means exactly what it says. I'm not sure I understand the difference of why the particular portion of the Illinois income tax, those sections matter, as opposed to... Because... Go ahead. ...the tax liability, the tax imposed, and the tax you pay. There are specific sections in the Illinois Income Tax Act that explain how you pay with estimates, quarterly estimates, and a yearly filing. And those are sections 601 and 803. And that's very specific provisions in the Illinois Income Tax Act about how you pay that tax in a year. The tax imposed, however, is a straight percentage of your taxable income for a year. It is an amount. And it can change as circumstances change and if you need to amend your tax return. But the income tax imposed is 7.3% of your income. It's distinct from how you pay it. And how you pay it may be affected by a tax refund. Which means if I owe $1,000,000 in tax as a company, but I get a $500,000 refund coming to me from a prior year, I will only pay $500,000 in tax. So imposed $1,000,000, paid $500,000. Absolutely. That's exactly what we're saying. And it makes a difference. And it's not about an accounting method. With all due respect, that's a red herring. We're not arguing about accounting methods in a statute. We're arguing about what the statute says. And the words tax imposed, the words tax imposed are different from tax collected. And they are different from tax paid. And it's a distinction that's been recognized in the case law for decades. The cases that have been cited from the Supreme Court of the U.S. back in the 40s and 50s all recognized the distinction. We cited the New York v. United States case where the court made very clear tax imposed is different from tax paid. Of course it is. Well, what about the Lewitt case? The Lewitt case, in our view, reinforces the same point. But it had additional and unusual language, and that's what led to the result that we have in that case. That case actually involved a very complex set of tax loss carrybacks. Because of excessive profits during the war, during World War II, the government sometimes would come in and tell vendors to the U.S., we're going to cut what we paid you. So you may have had a big profit back in 1944, but now in 1946 we're adjusting. And that created huge swings in profits and losses and problems. And so Congress passed a statute that allowed for losses in the post-war years to be carried back to prior years. And there was a complicated provision for how you would credit prior excess profits taxes paid. And the language was that tax imposed under a particular section of the Internal Revenue Code paid or accrued within the year. And that was impossible for the courts to figure out what exactly that meant, because it had three concepts in it. They're all different. And if you read the Lewis decision, in particular the dissenting opinion by Justice Frankfurter, he explains it. And you need to spend a lot of time with it. I did, yesterday. And the accrued is not the same as imposed. Tax paid is the simplest one. It's what you pay in a year. In the year 1946, this is what I paid. Tax imposed is what you truly owe. What the taxing authorities say your liability is for that year. Income tax here in Illinois is 7.3% for the taxable income. Accrued, according to that court, meant what your liability appears to be when you file your return, based on accrual accounting. And these concepts are actually dealt with in the Internal Revenue Code. The taxpayer in the Lewis case was on the accrual method of accounting, and it was, according to the court, required to stay on the accrual method. The issue in the end was, when we let you take this loss in 1946 and bring it back to 1944, what are we bringing it back to? And the court in the end said, what you're bringing it back to is the actual accrued tax due in 1944, based on your return in that year. Very difficult to keep straight, but the case does not stand for the proposition that imposed is ambiguous or doesn't mean the true liability. What the case stands for is the proposition that when Congress puts the three words in the same line, it's going to have to defer, and imposed is going to have to be put back, and we're going to have to take the words paid or accrued, which Congress put in there, and give one of them a meaning, and that's what they did. You can't translate that decision to taking the word imposed in this Illinois Insurance Code section, 444 sub 3, and say it's ambiguous or it's unclear because there's additional references to tax paid or tax accrued. There are not. The only words used are imposed, and there's no authority for the view that imposed is anything other than the true liability. What about the argument you heard from the Attorney General about how the legislature can draw the distinction if it wishes that you are asking us to draw? I think that works in our favor for this reason. The legislature, when it passed the retaliatory tax as it currently exists, also passed the privilege tax, and the privilege tax actually has a feature in it that reduces the tax based on income taxes paid, and there is, as Mr. Hussack noted, a cash feature right in section 409 of the code on the privilege tax regarding how you can reduce the privilege tax if you pay a certain amount of income tax. That's true. When the legislature wanted a particular type of accounting in the statute, it could state that. We're here on the retaliatory tax, however, and that statute doesn't have anything about accounting on a cash basis. What it does have is language, certain fees and taxes are those collected, and it has language that the income tax is the one imposed on a particular section, 201A through D. That term means exactly what it says, which is 7.3% of your income in the taxable year, which is exactly how my clients have filed their retaliatory taxes. When they got a refund that adjusted the earlier year's income taxes, they adjusted it and they paid the additional retaliatory tax due, the department here is trying to confiscate more of their refund by treating that as a negative income tax paid no forward, when it isn't. It wasn't. We have a secondary position in the event the court does not find the regulation in conflict with the statute, which is that it does in fact, if you would take the regulation at face value and put aside how it conflicts with the statute, it talks about taking your income tax paid and decreasing it by the amount of any tax refund if it was considered in a prior year. The way the department has interpreted that regulation, they've taken that qualifier out, so it's meaningless. We say when you go back to the statutory construction principles at work, every word in the statute should be given meaning, different words used means different meanings were intended. You can't construe a statute or regulation in a way that makes part of it superfluous or meaningless or no effect. The department's position in this case offends all those principles for both the statute and the regulation. The statement was made in the brief standard argument that include is the key language in section 444, and that's all it means is the legislature was setting forth a list. That ignores the rest of the statute, which says what's included and uses particular terms to refer to different things. The article 25, fees and taxes collected, the income tax imposed under 201A through D. In the briefs, there was a suggestion that those words don't have the import that we ascribe to them, that the only reason those words are used is because collected is used throughout article 25 of the Illinois Insurance Code, fees and taxes, and imposed is used in section 201. If you go look at article 25 of the Illinois Insurance Code, which is 215 ILCS 5, 408 through 416, you only see the word collected in section 408. Much of the remainder simply says insurers shall pay, and section 409 actually uses the word imposed. You can't simply say the legislature was blindly or mindlessly using words without meaning, because it doesn't really play out if you take the argument through to its conclusion and actually look at what it's being referred to. We say a statute means what it says. Now, I'll close with going back to the purpose of these statutes, which is to not raise revenue but discourage foreign states from excessively taxing. The whole concept at work here is, are foreigners coming here being hit with a higher burden to do business here than Illinois companies face when they go to their state, let's say Nebraska. That's it. A tax refund from a prior year does nothing to change the burden of doing business in Illinois. It simply states that you overpaid in a prior year. You can't really advance the purpose of the statute, which is a narrow penal statute, by taking the interpretation that the Department is taking. Thank you. Thank you. Rebuttal? Again, may it please the Court, Richard Puzak. I think it's important here for the Court to kind of keep its eye on the ball and the big picture here, which is that the statute as a whole, fairly read, properly conforms to the Department's interpretation of it. The suggestion that there's been some type of unfairness here, that they've been retaliated against in some discriminatory way, I think doesn't need a response. The Department followed its regulation. It has consistently interpreted the statute to mean what its regulation says. They say that in this given year that's unfair to them. They don't dispute that sometimes it can work out the other way. Your kids go to the orthodontist. They wind up with a $5,000 bill for braces, but you spread the payments over two years and you discover later that you don't meet the 7% threshold for getting a deduction against your income taxes for medical expenses, and you want to do it on an accrual basis because that's more fair to you. But that's not what the law says. The law has to be applied in an even basis according to the language of the statute. The language of the statute here is perfectly consistent with the notion that all the legislature intended to do here was to create a list of things that's included within the retaliatory tax. We don't dispute that the word imposed sometimes can mean what the plaintiffs say it means, which is the true liability, I think, is the language that they use. They want to stay away from the word accrual because that causes them problems. But they don't dispute that the word also frequently, if not most often, just means made binding, made applicable. And that interpretation of the word in the statute is consistent with the beginning language in it that simply indicates that these are the items that are going to be included. Income taxes imposed in Illinois, privileged taxes and income taxes imposed in other jurisdictions. There's no true amount that's determined there. There's nobody actually paying taxes. Those are hypothetical. So the very same word in the very same section has the opposite meaning that they insist it has in this section for their purposes. They say that this is not a dispute about whether the statute prescribes some type of temporal accounting method or not. I say that can't be sustained. It's not plausible. The whole premise here is that they want to insist that this statute requires that certain payments be booked and reported in a given reporting period. There's no two ways about it. Either they're insisting that it requires that it be done in a certain reporting period, or they say that the statute is neutral, in which case we win. Our position is that the department has adopted a cash method for a lot of reasons. Because the legislature knows how to prescribe a temporal method when it wants to do so, the word imposed is perfectly consistent with the broader meaning of the statute, which is just an enumeration of the items that are and are not included in the statute. It strains the meaning to focus on it exclusively, give it this obscure interpretation that's not obvious from the meaning of the language, and attribute to it all this significance that doesn't make any sense when you think that some corporations are not on a calendar year basis. Some of them get extensions to file their returns, so there's no way that they can know. But they know what their cash payments are, that's easy enough. But there's no way for them to know ahead of time what they're going to have to report by March 15th when the retaliatory taxes are due, without any possible extension. And their theory is that under this true amount due, that the retaliatory tax returns are forever open, depending upon later amendments of their Illinois income tax returns to show that they actually owe more than they paid, or they get a refund. The simplicity of this system is consistent with the statute, which is you report what you paid for your Illinois income taxes during the prior calendar year. That corresponds to that element of your Illinois tax basis for income taxes. And we don't have to then get into this situation where if they overpaid and increased their basis in one year, then they have to go back and amend their return for a prior year, recalculate it, and leave everything open indefinitely. Their position is sort of like the Ptolemaic astronomy. If you start with the assumption that the Earth is the center of the solar system, you can come up with epicycles that try and explain the movement of the other planets. And I would say that their theory of the statute has epicycles on epicycles. The simplest interpretation of the statute is the one that's manifested by the first sentence in it. It says what's included in the retaliatory tax. The word imposed is perfectly consistent with that interpretation. It simply establishes that this is one of the taxes that's imposed by Illinois law. It has included the retaliatory tax. End of explanation. We urge the court to affirm the director's decision and reverse the circuit court's judgment. Thank you so much, Your Honors. Thank you. We'll take this matter under advisement. Stated recess until the very next case.